UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

JORGE W. MOREIRA,

        Plaintiff,

-v-                                                    No. 10 Civ. 266 (LTS)(KNF)

MINISTERIO DE ECONOMIA Y PRODUCCION
DE LA REPUBLICA ARGENTINA, and
INSTITUTO NACIONAL DE REASEGUROS,
SOCIEDAD DEL ESTADO EN LIQUIDACION,

        Defendants.

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 0 7 2012

## MEMORANDUM ORDER

Pro se plaintiff Jorge Moreira ("Plaintiff" or "Moreira") brings this action for malicious prosecution against the Ministerio de Economia y Produccion de la Republica Argentina, Argentina's economic ministry (the "Ministry"); and the Instituto Nacional de Reaseguros, Soceidad del Estado en Liquidacion ("INDER"), a reinsurance company owned by the Argentine government (collectively, "Defendants"). Defendants have moved, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for lack of subject matter jurisdiction and personal jurisdiction, invoking the Foreign Sovereign Immunities Act, the doctrine of forum non conveniens, and the statute of limitations. The Court has reviewed carefully all of the parties' submissions and, for the following reasons, Defendants' motion is granted.

## BACKGROUND

Unless otherwise indicated, the following facts are taken from Plaintiff's

complaint and are undisputed. Plaintiff is a New York-based attorney, who, for several years, represented Defendant INDER in United States-based lawsuits and arbitrations. (Compl. ¶¶ 19, 24.) INDER failed to pay Plaintiff's fees and expenses for such representation promptly and, in January 2002, notified Plaintiff that the Argentine government had ceased all payments to foreign creditors. (Id. ¶¶ 25-26.) In December 2002, Plaintiff instituted an action against INDER and the Ministry in New York State Supreme Court to collect his overdue fees and expenses; the parties agreed to binding arbitration of the dispute, which was resolved in Plaintiff's favor in July 2005. (Id. ¶¶ 27-30, 35.) During the arbitration, Defendants proffered expert testimony that Plaintiff's fees were per se exorbitant; the expert later admitted that she was aware that the high fees were the result of an hourly billing rate, and that the exorbitance argument was merely "a tool with which to negotiate a reduction" of Plaintiff's fees. (Id. ¶¶ 31-34.)

In September 2003, while the New York arbitration was still in progress, INDER filed a criminal complaint against Plaintiff in Argentina, claiming that Plaintiff's fees were exorbitant, that he engaged in fraudulent billing practices, and that he had conspired with INDER employees to obtain approval of these bills. (Id. ¶¶ 36-38.) The case was resolved in Plaintiff's favor; INDER appealed twice, and ceased appealing after the third consecutive decision in Plaintiff's favor was issued in May 2009. (Id. ¶¶ 39-43.)

In the instant malicious prosecution lawsuit, Plaintiff seeks compensatory damages for the costs of defending himself against INDER's Argentine prosecution, related business losses, and emotional distress; he also seeks punitive and exemplary damages. (Id. ¶¶ 52-57.)

## DISCUSSION

Defendants contend principally that this Court lacks both subject matter and personal jurisdiction of this action because the underlying act complained of – a criminal prosecution in Argentina – is a sovereign act for which the governing United States statute makes no exception to sovereign immunity. The Foreign Sovereign Immunities Act of 1976 (the "FSIA"), codified at 28 U.S.C. §§ 1330 and 1602 et seq., "contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its . . . agencies or instrumentalities." Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 488 (1983). The FSIA generally codifies the "restrictive" theory of foreign sovereign immunity, under which foreign states and their instrumentalities are presumptively immune from suit in the United States for their "public acts," but not for their "strictly commercial acts." Id. at 487. The FSIA provides statutory exceptions to the broad principle of sovereign immunity for, inter alia, certain commercial activity and circumstances in which the foreign defendant has explicitly or implicitly waived sovereign immunity. These exceptions provide the sole bases for the exercise of subject matter jurisdiction over a foreign state. Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). "The party asserting jurisdiction has the burden of showing by a preponderance of the evidence that the subject matter jurisdiction exists." USAA Cas. Ins. Co v. Permanent Mission of Republic of Namibia, 2010 WL 4739945 at *2 (S.D.N.Y. 2010), aff'd, 681 F.3d 103 (2d Cir. 2012) (internal citations and quotations omitted).

Defendants here do not dispute any of Plaintiff's factual allegations. They argue that they are, as a matter of law, entitled to dismissal of the complaint for lack of subject matter and personal jurisdiction because none of the FSIA's statutory exceptions to sovereign immunity applies to permit Plaintiff's malicious prosecution action to go forward.

Commercial Activity Exceptions

The FSIA specifically provides that instrumentalities of a foreign state may not be sued in the United States on a claim of malicious prosecution. 28 U.S.C. § 1605(a)(5)(B). Plaintiff acknowledges this prohibition, but argues that its claim is nonetheless viable under the commercial activity exception to sovereign immunity, which reads in pertinent part as follows:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is [1] based upon a commercial activity carried on in the United States by the foreign state; . . . or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).[1] The FSIA "defines [commercial] activity as 'commercial activity carried on by such state . . . ,' [28 U.S.C.] § 1603(e), and provides that a commercial activity may be 'either a regular course of commercial conduct or a particular commercial transaction or act,' the 'commercial character of [which] shall be determined by reference to' its 'nature,' rather than its 'purpose,' [id.] § 1603(d)." Saudia Arabia v. Nelson, 507 U.S. 349, 356 (1993).

---

[1] There has been some debate in this district as to whether the FSIA provisions granting immunity in cases of certain torts (including malicious prosecution) but waiving immunity for "commercial activities" are mutually exclusive - that is, whether a district court may exercise jurisdiction of a malicious prosecution claim on the grounds that it falls within the "commercial activity" exception. Compare Bryks v. Canadian Broad. Corp., 906 F. Supp. 204, 208-210 (S.D.N.Y. 1995) (holding that an action for defamation, precluded by FSIA's torts exception, could not be maintained under the commercial activity exception instead, because this would subvert Congressional intent) with Yucyco, Ltd. v. Republic of Slovenia, 984 F.Supp. 209, 222-224 (S.D.N.Y. 1997) (holding that an action for interference with contract rights, precluded by the FSIA's tort exception, could be maintained under the commercial activity exception because the two sections, when strictly read, are mutually exclusive). The Second Circuit, without deciding the matter, has stated that the statute's "language suggests that [the exceptions] are mutually exclusive." De Letelier v. Republic of Chile, 748 F.2d 790, 795 (2d Cir. 1984). Here, because Plaintiff has failed to show that Defendants' conduct falls within the "commercial activity" exception, the Court declines to consider whether the relevant FSIA provisions are mutually exclusive.

Plaintiff contends that this suit is "based upon" commercial activity which occurred in the United States, because INDER criminally prosecuted him in Argentina in order to avoid paying the legal fees that it incurred in the United States. Plaintiff reasons that the retention of his legal services in the United States is a qualifying commercial activity, and this suit is "based upon" that activity because the Argentine prosecution of which he complains is part of that commercial activity (i.e., an effort to avoid paying liabilities INDER incurred in the course of the commercial activity).

The Supreme Court of the United States has, however, interpreted the phrase "based upon" very narrowly, focusing upon whether the particular activity at issue in the lawsuit is one that would be undertaken by a private party in a commercial transaction, rather than on the alleged motivation of the foreign state actor in engaging in the activity. Id. at 360-61. Thus, in Nelson, where an American who had been recruited to work in a Saudi Arabian hospital was allegedly abused by the Saudi police after calling attention to irregularities in hospital operations, the Supreme Court held the commercial activity exception inapplicable to the former employee's personal injury and other tort claims. The Court held that the operative conduct – "abuse of the power of its police by the Saudi Government" – was a matter "long . . .understood for purposes of the restrictive theory [of sovereign immunity] as peculiarly sovereign in nature," noting that "[e]xercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce." Id. at 361-362. The allegedly retaliatory purpose of the police conduct was insufficient to bring the action into the commercial exception, which turns on the nature, rather than the purpose, of the activity complained of. Id. at 363.

Like the use of the police in Nelson, the state-initiated criminal prosecution of which Plaintiff complains here is an activity that is not one that could have been undertaken by a

private commercial entity. It is a sovereign function and thus, notwithstanding its alleged purposes of furthering Defendants' commercial goal of avoiding financial liability, is not a "commercial activity" within the meaning of the statute. The first clause of § 1605(a)(2), excepting litigation "based upon a commercial activity carried on in the United States by the foreign state," is thus inapplicable.

Nor is Plaintiff's resort to the third clause of § 1605(a)(2), which provides an exception for litigation based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere . . . that . . . causes a direct effect in the United States," availing. This exception is meant to "embrace commercial conduct abroad having direct effects within the United States." H.R. Rep. No. 94-1487, at 19 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6618. The commercial activity in this case, Defendants' retention of Plaintiff as their attorney in connection with commercial matters, occurred within the United States. Plaintiff, however, contends that the requirement that the act be "in connection with a commercial activity of the foreign state *elsewhere*" is satisfied because the commercial decision to not pay Plaintiff's fees was made in Argentina. This argument is meritless. The only commercial activity in this case is INDER's retention of Plaintiff's legal services in the United States. Accordingly, the decision to cease payment of Plaintiff's fees was made in connection with this United States-based commercial activity, and not in connection with a commercial activity outside the United States. Nelson's logic is instructive here as well. The act complained of is not the decision to refuse to pay Plaintiff's bill. Rather, it is the decision of the sovereign defendants to initiate and prosecute, through several appeals, a criminal action in their domestic courts.

The commercial activity exception provisions of the FSIA thus provide no basis

for this Court's exercise of subject matter jurisdiction of this action.

Implied Waiver Exception

Plaintiff's final argument is that, by participating in the New York state court arbitration, Defendants implicitly waived their immunity under the FSIA. See 28 U.S.C. § 1605(a)(1) (denying immunity "in any case in which the foreign state has waived its immunity either explicitly or by implication."). Plaintiff contends that, because Defendants raised the issue of fraudulent overbilling in the New York arbitration, they have waived immunity with respect to any action involving claims of overbilling (such claims were the basis for the Argentine prosecution). The legislative history of the waiver exception specifically cites a foreign state's "agree[ment] to arbitrate in another country" as an example of an implicit waiver. H.R. Rep. 94-1487, at 18 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6617. This Circuit has held, however, that the implicit waiver provision "must be construed narrowly," and applied only in situations in which the waiver has been "unmistakable" and "unambiguous." Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir. 1991).

Defendants' consent to arbitrate the question of whether Plaintiff had overbilled in the context of his collection action is hardly an unmistakable or unambiguous waiver of their immunity from a separate tort suit seeking damages on account of Defendants' later initiation of a criminal prosecution related to the billing in the Argentine courts. This action involves "a different set of rights and obligations," Shapiro, 930 F.2d at 1018, from those at issue in the collection action. Any waiver implicit from Defendants' participation in the earlier arbitration does not extend to litigation of this case. The FSIA's waiver exception is thus unavailable to support subject matter jurisdiction of this action.

Because this Court lacks subject matter jurisdiction under the FSIA, it need not address Defendants' remaining arguments.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is granted. The Clerk of Court is requested to enter judgment accordingly and close this case. This Memorandum Order resolves docket entry no. 15.

SO ORDERED.

Dated: New York, New York
December 7, 2012

LAURA TAYLOR SWAIN
United States District Judge